DEAN *v.* AGAARD.

1. CANCELLATION OF INSTRUMENTS—BILLS AND NOTES—MORTGAGES
—EVIDENCE INSUFFICIENT TO WARRANT SETTING ASIDE.

In a suit to set aside a note and real estate mortgage
assigned by the mortgagee to a bank, on the ground that
plaintiff did not sign them, and if she did sign them she
did not know their contents, the finding of the court below
that plaintiff had understandingly executed them, *held,*
justified by the record.

2. SAME—FRAUD—BURDEN OF PROOF.

In a suit to set aside a note and mortgage on the ground
that plaintiff did not sign them, and if she did sign them
she did not know their contents, plaintiff had the burden
of proof.

Appeal from Van Buren; Warner· (Glenn E.), J.. Submitted April 11, 1928. (Docket No. 103, Calendar No. 33,678.) Decided June 4, 1928.

Bill by Minerva Dean against Nelson Agaard, the Citizens State Bank of South Haven, and others to set aside a note and mortgage. From the decree rendered, plaintiff appeals. Affirmed.

*James E. Chandler* and *David Anderson,* for plaintiff.

*Fred C. Cogshall,* for defendant bank.

FEAD, C. J. This is a bill to set aside a note and real estate mortgage executed by plaintiff to one Nelson Agaard and assigned by him to the defendant Citizens State Bank as collateral security to his own note, and also to set aside a deed from plaintiff to defendants Young. The plaintiff appealed from that

part of the decree declaring the note and mortgage valid.

Agaard was a stepson of plaintiff's deceased husband, and had made his home with plaintiff and her husband during his vacations from college. He left home, married, and plaintiff had not seen him for a year and a half, when, in May, 1926, he returned to South Haven and made his home with plaintiff. She had great confidence in him. In July he organized the South Haven Daily News Company, a $50,000 corporation, the articles reciting that $10,000 of the capital was subscribed and $1,000 paid in. Agaard held 98 shares of the stock, plaintiff and another person each one share. To help finance Agaard's newspaper scheme, plaintiff loaned him $2,700 of her own money on his unsecured note, and, in July, indorsed his note at the defendant bank for $1,500.

On August 23d, Agaard appeared at the bank with a form of note for $2,500 and mortgage covering plaintiff's home, running to himself, and negotiated for a further loan. Dillie, cashier of defendant bank, and Agaard went to plaintiff's home, where Dillie told her he had come to take her acknowledgment to the mortgage and note for $2,500 to be used as collateral to Agaard's loan. Plaintiff signed the instruments, and the next day the loan was completed by Agaard's giving his own note to the bank, with assignment of plaintiff's note and mortgage as collateral, and the crediting of $2,500 to the news corporation account, all of which was used by that concern in its business.

Plaintiff was in poor health in 1926. The doctor had told her she had a cancer. She had a slight operation at South Haven in May. In October she went to Ann Arbor, and had a more serious operation in November. On Thanksgiving Day Agaard appeared at the hospital with a deed of the home running from her to defendant Young. Plaintiff, understanding that he had an opportunity to sell the property

for $4,750, signed the deed. But she testified that she thought the instrument was not binding, and she could later determine whether she would sell. The deed recited that it was subject to the $2,500 mortgage, but plaintiff stated that she had not read it. She said that on her return home in December she insisted on withdrawing the sale to Young, and then first learned there was a mortgage on the property.

Taking her niece with her, she called at the bank. Both women testified that she there denied the execution of the note and mortgage, and that Dillie recalled the circumstances to them. Plaintiff afterward sent her sister to look at the signatures. The sister identified them as plaintiff's normal handwriting. Plaintiff began to remember that she had signed the mortgage. She and her niece made a second visit to the bank, and testified that Dillie then stated he did not think plaintiff knew what she was signing at the time she executed the instruments. Dillie admitted the visits, but denied the admission.

In her bill plaintiff denied that she had signed the note and mortgage. By amendment at the hearing she averred that, if she signed them, she did so at the request of Agaard and Dillie, and did not know their contents. The circuit judge, who had the advantage of seeing the witnesses, found that plaintiff had understandingly executed the note and mortgage to aid Agaard in his newspaper scheme. After careful review of the record, we agree with this conclusion. There was no evidence of misrepresentation or concealment of facts. The bank had no incentive to obtain the security by stealth. It was not obtained to secure loans already made, but was to cover new advances. The mortgage was made in the course of plaintiff's financing Agaard. Plaintiff's testimony is not convincing. Her attitude was that she had not signed the instruments until her sister's identification made that position untenable. She said she came to

the conclusion that she had signed the mortgage some time before suit was begun, but she alleged in her bill that she had not signed it.    At the trial she denied that she had signed the note.

Plaintiff has not sustained the burden of proof that the note and mortgage are not valid, and the decree is affirmed, with costs.

NORTH, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.